[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried in Boston, Massachusetts on September 13, 1958. The plaintiff has resided continuously in Connecticut for approximately twelve years. The parties have three children all of whom have reached their majority. The evidence indicates that the marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground.
The plaintiff, age 60, enjoys generally good health. He holds a master's degree in business administration and is Chairman of the Board and Chief Executive Officer of a major corporation. He impressed the court with his candor, intelligence and interest in fairly resolving the outstanding financial issues involved in this case.
The defendant, age 59, did not appear for trial. She suffers from chronic alcohol problems and has struggled with this condition throughout the marriage. She currently resides in Idaho. The defendant was ably represented by both her counsel and her court appointed guardian ad litem. They fully presented the court with a history of the defendant's contributions to this marriage, including her working, bearing four children and performing the duties of a homemaker. CT Page 1431-TTTT
The court was further informed of the defendant's position on the division of the family's assets. The court regrets it was unable to meet the defendant, but it is satisfied that it has been advised by both sides of all the information necessary for it to render decisions on the outstanding issues.
This was a long marriage with more than its share of tragic events. The cause of the breakdown was the defendant's problem with alcohol. Although alcoholism is recognized as a disease, it appeared to the court that the plaintiff was not convinced that the defendant did not cause the problem by continuing to drink. From the evidence presented, the court can not reach that conclusion. The court declines to assess fault for the breakdown of this marriage to either party.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-62, 46b-81 and 46b-82
in reaching the decisions reflected in the orders that follow. A significant consideration was the fact that the parties separated in 1992 and a very substantial and significant amount of increase in assets occurred after the separation.
The following orders may enter.
(1) The plaintiff shall pay to the defendant as periodic alimony the sum of $10,000 per month. The payments shall commence on March 1, 1996 and monthly thereafter, in advance, $5,000 payable on the first day of each month and $5,000 on the 15th day of each month. The payments shall continue until the death of either party or the defendant's remarriage, whichever event first occurs. A contingent wage withholding order may enter.
The existing pendente lite orders shall continue for the month of February, 1996.
(2) The defendant shall transfer her interest in the marital residence at 53 Londonderry Drive, Greenwich, Connecticut, to the plaintiff. The plaintiff shall be responsible for the payment of the mortgage, taxes and other expenses incident to the real estate, and he shall hold the defendant harmless of and from any liability in regard to said real estate.
(3) The defendant shall retain her bank accounts in Idaho and Florida having balances of approximately $24,000 as well as her CT Page 1431-UUUU two investment accounts having a combined total of approximately $41,000. Also, the defendant shall retain free and clear the $50,000 advance previously made by the plaintiff.
(4) The plaintiff shall retain the undeveloped land in Hilton Head, South Carolina and shall hold the defendant harmless of and from any liability in regard to said real estate.
(5) The plaintiff shall promptly with the assistance of the defendant and her guardian ad litem and counsel establish a trust for the benefit of the defendant. The purpose of the trust will be to invest, manage and distribute funds to the defendant and in her behalf for her needs, comfort and pleasure. The income from the trust and the principal, if the trustees so determine, shall be available to the defendant.
The court reserves jurisdiction over all issues involving the formation of the trust, including the naming of trustees, their powers, and distribution of corpus upon the death of the defendant.
If the parties are able to agree on the form and contents of the trust, they shall submit an executed copy of the trust instrument to the court for its approval.
If the parties are unable to agree on any of the terms of the trust, they shall notify the court, and it will hold a hearing and will allow the parties to present their recommendations, and the court will then decide the disputed issues.
The parties shall either file with the court an executed trust instrument for approval or a request for a hearing on disputed issues no later than May 1, 1996.
(6) When the trust for the defendant is established, the plaintiff shall transfer to the trust, as an assignment of property, the entire Paine Webber stock account, which account has a net value, after outstanding loans, of approximately $1,900,000.
As of February 13, 1996. the plaintiff shall hold this Paine Webber account as trustee for the defendant. All interest, dividends and growths or losses in value shall accrue to the benefit or detriment of the defendant. The interest due on the outstanding loan shall continue to be paid as is presently being CT Page 1431-VVVV done, by charges against the account. The loan shall be repaid, either at the time of transfer of funds to the trust or earlier at the option of the plaintiff. The court reserves jurisdiction to review the payment of loan interest if there is an unanticipated delay in the formation of the trust.
(7) As a further assignment of property, the plaintiff shall transfer to the defendant's trust the sum of $800,000 in cash. The transfer shall be made, without interest, when the residence in Greenwich is sold or July 1, 1997, whichever first occurs.
(8) As an assignment of property, at the time the trust for the defendant is established, the defendant shall quit claim to the plaintiff all of her right title and interest in and to the condominium presently owned jointly by the parties at Elkhorn Summitt #2808, Ketchum, Idaho. The plaintiff shall then transfer this property into the trust for the defendant's benefit. The trust shall be responsible for all expenses incident to said condominium.
(9) The plaintiff shall retain all of the Bernstein stock accounts and Pittston Minerals and Pittson Services stock with a combined value of approximately $2,000,000 and shall retain all other bank accounts, stock options and retirement and pension funds in his name.
(10) The parties shall each retain the personal property, including automobiles, in their possession free of any claims by the other.
(11) The plaintiff shall be solely responsible for the liabilities listed on his financial affidavit dated February 8, 1996 and hold the defendant harmless from any liability thereon.
(12) The defendant shall be solely responsible for the automobile loan and credit card debts listed on her financial affidavit dated February 8, 1996 and hold the plaintiff harmless from any liability thereon.
(13) As long as the plaintiff has available to him his executive salary compensation plan, he shall designate the trustees of the defendant's trust as beneficiaries of the benefits provided in the event of the plaintiff's death prior to his retirement. This obligation shall terminate if the plaintiff's obligation to pay alimony ceases prior to his CT Page 1431-WWWW retirement.
After the plaintiff's retirement, and if he is still responsible for the payment of alimony, he shall maintain $1,000,000 of life insurance for the benefit of the defendant, designating the trustees of her trust as beneficiaries, for as long as the plaintiff has an obligation to pay alimony to the defendant or shall designate the defendant's trust as the beneficiary of $1,000,000 from his estate.
(14) The plaintiff shall furnish the defendant with medical insurance with the same coverage she presently has until the death of either party, the defendant's remarriage or the defendant's 65th birthday, whichever event first occurs. The plaintiff, as additional periodic alimony, shall be responsible for the payment of the defendant's premiums for the entire period of coverage. The defendant shall be solely responsible for her own uninsured and unreimbursed medical expenses.
(15) The plaintiff shall pay $5,000 to the guardian ad litem for the balance of his fees. CT Page 1431-XXXX
(16) The plaintiff shall pay to the defendant for counsel fees the sum of $20,000. The court finds that a total denial of the defendant's claim for counsel fees would unduly impair and undermine the other financial awards entered.
Judgment may enter accordingly.
NOVACK, J.